May it please the Court, Michael Kodner on behalf of Petitioner Gabriel Almanza-Arenas. There are two central issues that drive the current petition before the Court. The first one being whether there was a proper determination regarding the crime of moral turpitude, or CMT, which was what we call for. Why don't you project your voice, and you don't have to read, just talk to us. Understood, Your Honor, understood. I apologize. The second issue being whether the petty offense exception was properly applied in this respect in terms of saving him from the CMT finding. Starting with the cancellation application, I believe an important starting point is from a citation from Justice Fletcher's dissent, which Justice Pregerson and Justice Fischer joined. Counsel, we're not justices. Your Honor, I apologize. There's no justice on the 9th Circuit. That's been good for a laugh for a hundred years. Fair enough, fair enough. Okay. I believe the quote that is important is, Congress intended that an application for cancellation of removal be decided on the basis of whether state court records happened to be sufficiently clear to prove a negative. Under this framework, I would direct the Court's attention to 10851A under the California Vehicle Code, which was determined in the court. Why don't you just speak plain English so we can understand you? You got something to go through? I do, Your Honor. You know, you got Almanzana. He was undocumented, and he was convicted under California Vehicle Code 1051A. Correct, Your Honor. It could have been either joyriding or car theft. It could have been joyriding or auto theft. It absolutely could have, Your Honor. Okay. Then where do you go? Thank you, Your Honor. I think that that's where it's important under the categorical analysis where the new decision from the Supreme Court, Moncrief, comes in, and I believe directly addresses the Young's decision, the Young decision from this Court. Not quite. Not quite. So you should pursue that. But Moncrief does not directly address Young because Young was a modified categorical case, and so it would be very helpful if you can address it in those terms because I have a great ñ we all have a great interest in the vitality of Young since I was on that en banc panel. Understood, Your Honor. I can assure you that I have a direct interest. We all do. So I'd like you to be careful in your distinction. Understood, Your Honor. I think the first comparison between the two is that in Moncrief, while they didn't use the words modified categorical analysis, they were proceeding in somewhat under the modified analysis because they looked at Moncrief's change of plea to hook it to the legal basis that they've determined is what's relevant in the categorical analysis. So I think that's one reason to show that. Well, let me ask you this. You know, that you're interested in the language in Moncrief, this language. We must presume that the conviction rested upon nothing more than the least of the acts criminalized and then determine whether even those acts are encompassed by the generic Federal offense. Correct, Your Honor. You like those words. I do. I'm a fan of those words. That's what it is. All right. Absolutely, Your Honor. And I think that that's where the Moncrief decision addresses the Young court in the respect of it takes ñ it doesn't mention the burden of proof. I can't deny that. I wish it did. Because the burden of proof wasn't relevant in Moncrief. It was relevant in Young given the posture of it was a removal case. It was, Your Honor. But I think that, Your Honor, I'm sure it was read from the Moncrief decision. They said that this ñ Oh, I've carefully read it. So have I probably 15 times and I get a different result in terms of something coming up new that I need every time. The point being is that it took the analysis of ñ the categorical analysis and said, this is a legal analysis no matter what. It is not a factual analysis. This is a legal analysis. And that's why I think that it addresses the burden of proof issue and the fact that it says that in removability or relief context, it's the same. The point is, is that Young and the Board's focus on the differing burden between roof and eligibility has been blown apart for the most part by Moncrief in my belief. Again, I go back to Justice Gregersen's, Your Honor's, citation to this. And it says that it does address this in the respect of taking it away from the burden of proof issue. Equally important, I think, is Moncrief's focus on two things, that there's a presumption of neutrality irrespective of who retains the burden and reiteration that any ambiguity, which I think there was an issue here because we had an inconclusive record, any ambiguity lies in favor of the alien. I think these points directly address Young. The focus on the party who bears the burden runs the risk of non-persuasion. Now, in keeping the focus of the relevant inquiry on being one of a legal basis, Moncrief negates the focus again on the party who bears the burden. However, I think a further extension of this reading is if we look at the preponderance of the evidence standard, which does relate to the burden of proof, this is a factual situation that's reserved for credibility, for continuous presence, and there's nothing to show that from the Moncrief decision that this is extended to the legal inquiry from the categorical analysis. That is what we cannot get away from here. Regardless of the burden of proof, we are dealing with the categorical analysis here of a crime. And it reverts us back to that initial statement that Your Honor stated, that the focus is what the crime necessarily rested on. I think that Young is also inconsistent with Moncrief's analysis of the statutory framework of removal proceedings. As we know, removal proceedings have two parts. They have the removability and then the relief from removability. For the first part, the government is required to produce documents that show a charge of removability. For the second part, if the immigration court finds the noncitizen removal, the noncitizen presents his or her case for relief. Moncrief confirms that once the government fails to establish that a conviction results in removability, even if it wasn't charged, but if we're dealing with a CMT provision here, that conviction cannot subsequently form the basis of a barge relief from removal. This is precisely what the Board did in the present case. I think the point is, pursuant to the controlling regulations, which is at 8 CFR 1240.8D, when an immigration court addresses a criminal barge relief, the government already would have produced documents relating to the criminal bar in its case for removability. This is what happened in this case. The government produced the records. They produced the change of plea. They produced the complaint. What is relevant is, is that they didn't request the transcript, probably knowing that it would have been irrelevant. Contrary to Young, Moncrief explains that this is sometimes an insurmountable burden when we're dealing with an inconclusive conviction record. In other words, the burden that Young places on noncitizens to obtain what they believe to be conclusive records is mostly impractical. I think, more importantly, Moncrief limits the Nishwan decision in connection with the CMT analysis, which was at issue here. The underlying reasoning is the circumstance-specific approach from Nishwan only applies in the rare circumstance, which is when it is in itself written in to the immigration statute by a qualifying phrase. Moncrief, I think, supports this conclusion, reached by several circuit courts, that the CMT grounds do not support the Nishwan analysis because they do not include the express directive to examine the underlying conduct. And I would refer that to the Fourth, Eleventh, and Third Circuits. Now, by excluding the Nishwan mini-trial analysis from the CMT review, I think Moncrief appears to reiterate, in the CMT review, there must be a definitive ending point in this legal analysis. Or as this Court appropriately put forth in Young, either the record of conviction either establishes that the applicant was necessarily convicted of the predicate offense, or the record does not. It's one or two. This is not what Young does. No, I mean, that's a good speech. Everybody in this courtroom just follows every word that you're uttering, you know, take us through this labyrinth. It is a labyrinth nonetheless, Your Honor. Yeah. Yeah. Okay. So you represent Arenas. That's an easy way to refer to it. Yes, Your Honor. And he was undocumented. He was convicted of violating 10.851 of the Vehicle Code. Okay? And we know that that can cover both joyriding and auto theft. And he's seeking, what, cancellation of removal? Yes, Your Honor. Okay. Then you need three things, continuous physical presence, et cetera, 10 years, and he takes care of that. And also the hardship. I know. I know. Good moral character and not have been convicted of an offense under 1182A2, 1227A2, or 1227A3. And the removal would result in extreme and unusual hardship. A U.S. citizen, this way, permanent resident, all right, so car theft and joyriding. It classifies aliens as inadmissible for visas based on convictions for certain crimes involving moral turpitude. All right? And so then we go to the next one to determine whether he's been convicted of a crime involving moral turpitude. I'd like to say moral turpentine, but turpitude is better. We look to the four Shepard documents, right? The charging document, the transcript, the plea agreement, the comparable judicial record. And your client didn't submit transcripts because they would not have been helpful, apparently. He pled pursuant to People v. West, which the defendant does not admit to any factual allegations. Car theft involves moral turpitude. Joyriding does not. And then here the record is inconclusive as to whether your client was convicted of a crime involving moral turpitude. Then we go to Young v. Holder. And the Ninth Circuit held that a petitioner with an inconclusive record of conviction is not eligible for cancellation of removal. And then we move on to the Supreme Court's decision in Moncrief, and we come to that wonderful sentence I read earlier, that you penalize the least of the acts criminalized and determine whether even those are encompassed by the generic offense. And if we do that, it's Joyriding and your guys home free. That's what you like. That's a real good game plan, Your Honor. Okay. I got your argument well in hand. There is one issue that I would like to address with the West plea. This is going to be on the bar exam. I think I'd be ready to take it at this point. Oh, yeah, well. I think, just going back to the West plea for a moment, I do believe that the agencies did have an improper understanding of what a West plea is. The point being is, is if we have a proper understanding of what this West plea is, it tells them that this insistence on the transcript of plea would have been entirely irrelevant and would not have done anything to further the analysis. I practiced before the Superior Court in San Diego. I've gone through these pleas every single time without exception. All the judge does is he takes the change of plea and reads it into the record. They do not add any kind of factual basis for this. And I think that that's important because it reverts back to the Ruiz decision, which states that there was no factual basis for guilt. We're familiar with West pleas. I understand. And I did want to address the Court's issue in Valdivinos, which said that it understood that, okay, well, let's go back and revert back to the complaint and see what that does to help us here. Valdivinos doesn't hurt us in this respect because if we go back to the complaint, it is, as Your Honor stated, worded in the conjunctive, and it would not have provided whether it was joyriding or not. There is one minute remaining, Your Honor, and I would like to address the petty offense exception. You only got a minute and 12 seconds. I do, Your Honor. I think my biggest point with regard to the petty offense exception obviously comes to the literal language between 1227 and 1182. Our strongest argument in this respect is that the Board arbitrarily reads out the admission in the five-year language with respect to the petty offense exception. Could you explain in your approach to this the relevance of Chevron deference to the BIA's interpretation? Yes, Your Honor. I believe that in Gonzales-Gonzales, this Court had indicated that this is not an unambiguous statute. So I don't believe that we're to the second part of the Chevron deference where we have to give it to the Board. So that's my biggest issue in terms of addressing where we are with Chevron with this statute. So you're relying on it's ambiguous and, therefore, we don't give any deference to the BIA? Yes, Your Honor. I think that that's exactly what it is. 1227 is plain in its language. It says it uses the words admission and within five years. And for the Board to read those out and just to arbitrarily skip over it, I don't understand how that's able to be squared. And I think that the second recent decision from Friday is an extremely telling factor of how irrational the Board's reasoning in this respect. And I understand that this issue is before the Court in the following petition, and I understand that it will be addressed more. But I think that that Reyes case is extremely telling. And I would reserve any remaining time for rebuttal. What's the site for that Second Circuit case? The Second Circuit case, I provided a 28J letter, Your Honor. It is Reyes v. U.S. The docket number is 11-5409-AG, and that is the Second Circuit opinion. The issue date was May 3, 2013. And I did provide a copy of the Reyes decision in my 28J letter. Okay. May it please the Court. My name is Carol Federighi. I represent the respondent, the Attorney General, Eric Holder, in this case. The Board of Immigration Appeals recently concluded that Mr. Almanza was not eligible for cancellation of removal because the record was inconclusive as to whether he had been convicted of a disqualifying offense, and he declined to produce relevant documents requested by the immigration judge. Under 8 U.S.C. 1229 AC4A, Mr. Almanza had the burden of proof to establish that he was eligible for relief, including the burden to establish that he was not convicted of a disqualifying offense. The conviction record before the immigration judge was ambiguous as to whether he was convicted of the turpitude part of the vehicle theft statute. Therefore, the IJ permissibly and reasonably asked Mr. Almanza to produce additional documents, specifically the plea colloquy, to see if that would help resolve the inclusiveness of the record. Mr. Almanza declined to produce the plea colloquy. The immigration judge accordingly reasonably held that the inconclusiveness of the record would be held against Mr. Almanza, who had the burden of proof, and that he had therefore not met his burden to show that he had not been convicted of a disqualifying offense. This conclusion is consistent with the Court's en banc decision in Young, and it's not overruled by Moncrief. First, the holding in Young was that an inconclusive record, an alien does not meet his burden of proof to establish his eligibility for relief by relying on an inconclusive record of the conviction. This, Almanza follows that holding in Young, and in fact goes beyond it and says, in addition, the burden is not met where the alien has been requested to produce additional documents and hasn't done so. Moncrief, in contrast, was in a different context. Moncrief did not involve a relief application, although to be sure the Court did refer to relief applications in describing the relevance of an aggravated felony in the immigration context. In fact, the context in Moncrief was just a determination of removability where the government has the burden of proof. Moncrief, therefore, did not address the burden of proof provision at issue here, and that the Young Court also specifically relied on. Moncrief, therefore, does not indicate or even suggest how the Court's analysis would play out in a case involving relief where the burden of proof is on the alien. Judge Pragerson has pointed to an excerpt in Moncrief where the Court states that in analyzing convictions under the categorical approach, you have to presume that the conviction rested on the least culpable conduct. That paragraph then goes on to say that there are some qualifications to that rule and then goes on to describe the modified categorical approach. So in a sense, what the Court is saying is under the pure categorical approach, yes, you presume that the least culpable conduct is the conduct at issue, but you can use additional documents relating to the conviction to establish that the conviction was actually under one portion of the statute. Under Moncrief, though, if the default rule is it always benefits the applicant, wouldn't that have some impact on the burden of coming forward with evidence? So if Moncrief suggests that the least disadvantaged interpretation of the conviction applies, why would an applicant ever come forward with additional categorical evidence? Well, that is correct. If the analysis of Moncrief was applied without further analysis to the relief case, it would result in that contraindicated result where the alien has the burden of proof, and yet he could sort of pick and choose what documents to present to the immigration court to show that he had an inconclusive record and not to resolve the conclusivity. So that is why in the relief context, well, that's probably one reason that the burden is on the alien to establish his removability both by statute and by regulation. Would it mean in this case the arguments made that it wouldn't have established it if he'd come forward with the plea transcript? Was the Supreme Court perhaps responding to that, that there's just simply a lot of cases where it's either difficult or impossible for the alien to come forward with the evidence, or the evidence itself doesn't prove one way or the other? That's a basis for distinguishing this case from Moncrief. In Moncrief and also in Young, there was no question raised by the parties or the court that there were possibly documents missing. In this case, the immigration judge said, I would like to see the plea colloquy. Now, it is true that the petitioner has argued that the plea colloquy wouldn't help. It wouldn't establish what he pled guilty to, but I would respectfully disagree with that. I think a West plea is, it's not always clear exactly what went on in a West plea, and the court's precedents, both the California courts and this court also made clear that what a West plea means is that there's, it could mean any of several different things. The West plea was inconclusive. Under Moncrief, how are courts then to interpret whether or not it's a disqualifying conviction? We would still argue that Young would apply and that the court should still apply the burden of proof provision to hold that the alien has not met his burden of proof. I just want to remind the Court this is a stronger case. How do you prove it if neither the charging instrument or the plea colloquy or the plea deal shows one way or the other, whether the disqualifying offense or a non-disqualifying offense is involved? The court, the, excuse me, the alien would be limited to the Shepard document, so would be limited to what was before the agency like in Moncrief and Young. None of them show. Yeah. And then in that case, he would be out of luck with regard to his application for relief. Is that what Moncrief suggests should happen when it's inconclusive? Moncrief doesn't really address that precise situation. Again, it didn't address the burden of proof provision. It didn't address this problem, which might advocate for a different interpretation of the burden of proof production. It just didn't get there. And the court would be leaping beyond the language of Moncrief to hold that Moncrief overrules Young. Yeah, but the, and I take that point. I mean, the difference between cancellation and removal and the burden of proof is critical to Young. But the Moncrief opinion in discussing the policy reasons underlying the categorical rule and the default presumptions and the burdens on the immigration courts and the disadvantages that the immigrant has in obtaining evidence all read contrary to the premise of the majority opinion in Young. I mean, that was discussed quite eloquently in the conflicting opinions. So now we have Moncrief coming along and validating the concerns of those who were not enamored of the majority interpretation. So is Young undermined if not overruled? Because the Supreme Court makes it clear it doesn't think the immigration courts were to turn into a litigation battle on the fine points of whether or not the facts of the case, as opposed to the nature of what the plea was or the resolution was. And that's squarely the problem of Young. Because Young is, I mean, the modified categorical approach is not one that opens up normally a big evidentiary battle. What it does is gives the government the chance to produce some judicially noticeable documents that can provide clarification. But that's the effect of Young could well be seen as saying, well, we're going to actually turn it into a mini-trial, and the immigrant will have to do the best he or she can to come in and persuade the immigration judge that this was not a crime of moral turpitude or whatever the issue may be. The Young decision didn't hold that the alien could come forward with facts regarding his offense. Right. So it didn't say it would turn the immigration proceeding into a mini-trial. Well, facts, yeah. You said the government, modified categorical approach allows the government. That is how the modified categorical approach arose. That's what it was. It was the government being given the opportunity to amplify, to carry its burden, to amplify beyond the charging documents and the like. Now the effect of Young is to say, well, the immigrant, who won't necessarily have access to as much as the government might be able to have access, can come in with whatever the immigrant can cobble up to provide the facts. Well, I would dispute the last part of that phrase, to prove the facts. The alien, in both situations, it's just a reverse image. Either the government or the alien, depending on the situation, has the burden to show what he was actually convicted of. Yes, but the modified categorical approach limits the government as to what it can do. And it would limit the alien similarly. Well, not clear. Yes, and in certain circumstances it might be said to treat the alien unfairly, but by the same token, when the government has the burden, there are going to be lots of cases where an alien really should be removed. Yeah, but Moncrief makes it clear that those are different equities. That's true, that's true. But I want to get back to this. Because it says, essentially, the government always has the backup of the exercise of its discretion not to grant. But what you're doing, what Young does, is knock out the immigrant flat out. And so the equities, as articulated by the Supreme Court, I mean, we debated it in Young, but now the Supreme Court pretty conclusively and more eloquently identifies the inequities and the problems for the immigration courts. Right. Moncrief did not conclusively overrule Young, however. I'm not suggesting that it did. Yeah. That's what I said. Did it undermine Young? I won't disagree with you that Young may require rethinking in light of Moncrief. I think it's way too early to say it's over. I don't think it did not overrule Young, because it did not address the same issue. I think it's too early to even say it's undermined Young. I don't think this case is the case that you need to address with a Moncrief overruled Young, because in this case, the immigration judge went beyond what happened in Young or Moncrief, and he requested additional documents, and the alien said, I'm declining to provide those documents. So in that case, the immigration judge said you didn't meet your burden of production, which is part of the burden of proof. You know, in addition to the burden of persuasion, you didn't even meet the burden of production. So we're going to hold. What was the sentence here, 24 days or something like that? Yes, that's correct. So that's good to tell you that joyriding, not car theft. Not necessarily. It was his first offense. Pretty close, you know. And, you know, under federal law, for example, driving an automobile across state lines is a felony. So the state has this joyriding provision, and, you know, 24 days. I used to think three days was a tough sentence when I was a municipal court judge, but 24 days. Anyway, today that's nothing. Under the guidelines, it might have been 24 years. But anyway. It was his first offense. That's certainly an indication to me that we're not dealing with moral turpitude, whatever that is. Well, if it's a theft offense, it would be a moral, it would be a turpitudinous offense. Turpitudinous. But now you're asking, the immigration judge is asking this immigrant to go out and get over to the state court and get records and all that. It's not easy to do. Go try to find out what traffic warrants you've got sitting there. Nobody knows. But the alien often is in as good a position as the government to obtain. Why? The government calls up and says, I'm the clerk of this court, and we need a little help. And I talk to the clerk of the state court. Will you help me? Oh, sure. So that's how you do it. How many years previous was the conviction on the auto, toy riding or theft? What do you mean how many years previously? I'm sorry. How many years previous was that? Oh, to his, let me see here. Just roughly. It was 2000 that he pled guilty. The immigration judge kind of implied that it's real easy to get a plea transcript from a case that was 11 years old, where only 24 days had been given. Well, it wasn't, the hearing was in 2005 is when he was requested to produce the documents. So it was five years old. But he never said, it's going to be too hard, I can't do it. He just said, I am not going to do it, because he chose to proceed under a different theory of the case. Was there some record where he came in and says, I refuse to do it? Yes, he said, the word refuse wasn't used, but we're not going to be producing it. We'll proceed on the record as it is. And he made this argument that under People v. West, there's nothing that the plea colloquy would have revealed. I would argue that it would reveal, it could reveal information about what offense he pled guilty to, if not the factual basis. For that reason, he failed to meet his burden of production, which is part of his burden of proof, and the immigration judge properly found that he had been, he had not established that he was not convicted of a crime involving moral supremacy. What about the docket sheet? Was that in the record? Yes. For the criminal proceeding, there was the electronic court printout of the proceedings. There was the plea form that he signed. That was in the record. So what did that show? That showed he pled guilty to a violation of, or was it guilty or nolo contendere to a violation of v. C-10851, and then it said People v. West on it. Yeah, that's where you can say, yeah. What I recall now is you say, yeah, I'm not completely guilty, but, or go to the facts. Yeah. But, yeah, okay. Without admitting guilt, I'll take a nolo plea so they don't go into the facts. Yeah. And it may not be that the facts aren't really what we're looking for. What we're looking for is what offense did he plead guilty to. When taking the plea, did the criminal court judge say, you know, you've been charged with taking, with intending to permanently, you know, taking a vehicle with intent to permanently deprive the owner of possession, and if he pled nolo to that charge, that would be a theft offense. If the, excuse me, the criminal court judge factored in. Well, he just had him plead to the code section. That's what the papers say. But we don't know what the judge said when taking the plea, and that's what we wanted to take a look at. It might not resolve the ambiguity, but it might. And that's, and the fact that the alien did not produce the document meant he did not meet his burden of production, and that was a reason for holding against him. I don't know. And I'm out of time, so. I'll try to find it for you. The plea. I don't think it's out there, but. Yeah. If there are no further questions, I'm way out of time. Thank you. Thank you. You know how many judicial officers the L.A. Superior Court has? No, I don't, Your Honor. Probably close to 1,000. Yeah. Yeah. So finding, tracking down transcripts. And they don't even have a system where their computers even talk to one another. So it is, it's difficult, it is a project to track down these transcripts sometimes, and that's why when it's the alien's burden, it should be put on the alien, unless he establishes he can't do it, like he's in custody or something. Well, who said he couldn't do it, the alien or his lawyer? His lawyer said he wasn't going to do it. He did not say he was going to do it. This guy over here? No, it was a different. No, he looks like he can do the impossible. Well, who was the lawyer? It was Mr. Hiltz. I don't know if he's here today or not. Mr. Conner can stay. Anyway, they chose to proceed on a different theory. A lot of them go before the immigration judges with, you know, the Justice Department allows immigrants before the immigration court to be represented by disbarred lawyers. You know that. I know it happens, but we don't allow it. We've got another case. You're going to hear from me again if you want to continue the dialogue. As Judge Fischer points out. Thank you. Okay. All right. All right, matter submitted.
judges: Gwin, Pregerson, Fisher